STATE v. MAXEY RAYMOND MARTIN, Appellant.—No. 40652.—208 S. W. (2d) 203.

Division Two, February 9, 1948.

*E. C. Hamlin* for appellant.

370

*J. E. Taylor,* Attorney General, and *John R. Baty,* Assistant Attorney General, for respondent.

[204] ELLISON, J.—The appellant was convicted of grand larceny in the circuit court of Greene County under Sec. 4456,[1] for the theft of two [205] lady's gold rings, a diamond engagement ring worth about $250, and an initialed wedding ring worth about $7.50 to $10.00, of the combined value of $257.50 or more, the property of Staley Williams, proprietor of a clothes cleaning establishment where appellant worked, and his punishment was assessed by the jury at two years imprisonment in the penitentiary.

He stood on his demurrer to the State's evidence and presented no testimony. The assignments of error in his brief complain of error: (a) in being forced to trial under Sec. 3898 on an amended information charging a different offense, and without adequate notice, and because the information was fatally defective; (b) in the admission of the testimony of the State's witnesses upon which he was convicted, because it had been wrongfully obtained by an illegal search of his person without a search warrant before he had been legally arrested, in violation of Sec. 15, Art. 1, Const. Mo. 1945, and Sec. 4348; (c) misdirection in the State's instruction No. 1; (d) failure to instruct on circumstantial evidence as a part of the law of the case, as required by Sec. 4074(4); (e) insufficiency of the State's evidence as to the ownership and value of the rings allegedly stolen.

The information upon which the case was tried was as follows, the italicised parts having been added by amendment to the original information:

"Wayne T. Walker, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under his oath of office

---

[1] References to our statutes are to R. S. Mo. 1939, and same section numbers in Mo., R. S. A. unless otherwise indicated. Italics in quotations are ours unless otherwise shown.

informs the Court that Maxey Raymond Martin late of the County and State aforesaid, on the 10th day of January, A. D., 1947, at the County of Greene and State of Missouri, did then and there wilfully, unlawfully and feloniously steal, take and carry away certain valuable property, to-wit: *one lady's yellow gold band ring with diamond set*; one lady's yellow gold band *wedding* ring, initials SIW to BLW, of the value of Three Hundred Seventy-five ($375.00) Dollars, the property of Staley Williams, then and there being Contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.''

Taking up appellant's assignments in logical order, he first contends the amended information was fatally defective because it failed to allege he took the rings with intent to convert them to his own use. There is no merit in the assignment. It was formerly so held, State v. Gochenour (Mo. Div. 2), 225 S. W. 690, 691(3). But that decision has long since been overruled, State v. Hodges (Mo. Div. 2), 234 S. W. 789, 790(2); State v. Hamlin, 351 Mo. 157, 171 S. W. (2d) 714, 715(3).

It is also asserted the information should have charged the larceny was from a *dwelling house*. Why that contention is made we cannot see,. since the instant larceny, if any, was committed in the prosecuting witness' clothes cleaning establishment. Appellant cites State v. Flowers, 311 Mo. 510, 514(3), 278 S. W. 1040, 1042(2), which was a dwelling house larceny case, in which the court commented on the fact that under (now) Sec's 4459 and 4460, read together, larceny from a dwelling house is a felony regardless of the value of the stolen property. Appellant may have based his contention on the assumption that the evidence here did not show the value of the rings was $30 or more, but the information alleged and the State's evidence showed it was far more than that. The information here is based on Sec. 4456, which does require stolen personal property, outside of livestock, to be of a minimum value of $30 to constitute the crime of grand larceny. A dwelling house has nothing to do with the case.

Next, as to appellant's contention that he was forced to trial on the amended information charging a different offense and without adequate notice. The transcript of the proceedings at the preliminary hearing held before a magistrate under Sec. 3893 on January 11, 1947, shows the complaint filed there charged appellant with the larceny of both rings, of the aggregate value of $375, almost in the identical language of the amended information. The original information was filed in the circuit court over two months later on March 21. For some reason the ring with the diamond set was omitted therefrom. Over three months [206] thereafter on the morning of the trial, June 23, and before the jury was impaneled and sworn, the prosecuting attorney filed the instant amended informa-

tion, which included the diamond ring as well as the band ring. Appellant's counsel objected on the ground that the amendment "makes a different charge;" "entirely changes the cause of action"; and that appellant wasn't served with a copy of the amended information until 10 A. M. The court overruled the objection and recessed until 2 P. M. to afford appellant's counsel an opportunity to study the amended information, and the trial started at the appointed time.

On these facts the appellant assigns he was prejudiced because the amended information was filed after the trial started; that it changed the cause of action; and that he was entitled to further time because it surprised him. We think neither contention is well founded. Sec. 3953 provides "an information may be amended either as to form or substance at any time before the jury is sworn," though it forbids that the amendment shall charge ";an offense different from that charged or *attempted* to be charged in the original information." It further provides no such amendment shall be permitted to delay the trial unless the defendant shall satisfy the court that he is entitled to additional time to prepare his defense. Sec. 3898 provides such amendments may be made "at any time by leave of court before the trial . . . when the same can be done without prejudice to the substantial rights of the defendant, on the merits, and no amendment shall cause any delay of the trial, except at the instance of the defendant for good cause shown by affidavit."

It will be noted Sec. 3953 says the amendment must be made before the jury is *sworn,* whereas Sec. 3898 provides it must be done before the *trial.* And appellant, relying on the latter statute, says the amendment was made *after* the trial had started. It is said in State v. Neal, 350 Mo. 1002, 1014(3), 169 S. W. (2d) 686, 693(8) that ordinarily the impaneling of the jury is the first step in a trial. And State v. Mitchell, 199 Mo. 105, 97 S. W. 561, 8 Ann. Cas. 749, holds the impaneling of the jurors regularly occurs before they are sworn. Under these decisions, therefore, the swearing of the jury would occur after the trial had started, which creates some apparent conflict, or at least ambiguity, in the two statutes. But the record here shows the amended information was filed before *both* the impaneling and swearing of the jury. Hence it was filed in due time under either statute.

As to appellant's complaint that he did not have due notice of the filing of the amended information, and was prejudiced thereby. Sec. 4001 makes it the duty of the clerk to furnish him a copy of the information only when he requests it. However, Sec. 4002 provides he shall not be required to plead until he "shall have had a reasonable time in which to examine the same and to prepare his pleading." The whole question here is one of the reasonableness of the trial court's ruling below. Appellant had known for six months

that he was initially charged with the larceny of both rings. And while the original information omitted to charge the theft of the ring with the diamond set, which a jeweler later testified was worth $250, and only charged the theft of the gold band ring, which the jeweler testified was worth $7.50 to $10.00; and while the stealing of the latter ring alone would have been mere petit larceny under that testimony—nevertheless the original information alleged that one ring was worth $375 and the prior record showed both rings were intended to be included. As to the band ring the amended information did not change the *offense* pleaded (grand larceny); and as to both rings it did not change the offense "attempted to be charged," as Sec. 3953 puts it. An allegation of the aggregate value of both rings was sufficient. State v. Dudley, 245 Mo. 177, 183(1), 149 S. W. 449, 450(1).

In the case cited by appellant, State v. Wright, 339 Mo. 41, 43(3), 95 S. W. (2d) 1159, 1160 (4, 5) an *indictment* charged the burglary of a house belonging to one person, and the trial court permitted it to be amended by alleging the house belonged to another person. The decision held that was error; that Sec's 3953 and 3898 supra, cover informations but not indictments; and that to permit the indictment to be thus amended would leave it unsupported by the oath of the grand jury. But in State v. [207] Mandell, 353 Mo. 502, 508(2), 183 S. W. (2d) 59, 61(6), opinion by the same author, the defendant had been charged by indictment with obtaining $9700 by false pretenses through the sale of designated lots to the prosecutrix. The indictment was quashed and a substitute information filed under Sec. 3953, charging the same offense but through sale of different lots. It was held this could be done. For the reasons stated we over-rule appellant's assignment.

■ The next assignment charges the State's evidence of the theft was obtained by an illegal search. On this point further facts must be stated. The prosecuting witness, Williams, testified that on the date of the alleged larceny he was absent from his cleaning plant for an hour and more in the early afternoon. He had left the rings there in his coat. On his return he could not find them. He asked appellant and another employee if anyone had come in and they answered in the negative. Appellant denied any knowledge of the rings. He was drunk. Williams then called the police.

Two detectives, Pursley and McClanahan answered the call. They told appellant it would be necessary for them to take him to the police station "for investigation of a theft." One of the detectives said it was for investigation of a felony. Appellant went with them uncomplainingly and was booked at the station "for investigation." The detectives told him it would be necessary to search his person. This was about 8 P. M. They had no warrant for his arrest and no search warrant. He submitted silently and stood up holding his hands

out. A search of his clothing revealed nothing, but when they took off his right sock the rings fell out. He told the detectives he didn't know how the rings got there. But afterward he told the Captain of Detectives that his employer, Williams, gave him the rings earlier in that day and told him to get rid of them. Objection to this testimony was made by appellant's counsel when it went in.

It is well settled that after a *lawful* arrest the prisoner may be searched, and that the evidence thus obtained may be used by the State.[2] But appellant contends he was not lawfully arrested. The two detectives did not have either a warrant for his arrest or a search warrant, and they did not testify they thought they had reasonable ground to believe he had committed a felony, which latter, if true, would have made the arrest legal even without a warrant.[3] On the contrary, they said they made the arrest and took appellant to the police station for "investigation" of a "theft", or "felony" —doubtless under Sec. 4346, the 20 hour detention statute covering arrests and detentions without a warrant, other process or complaint.

Sec. 3959 defines an arrest as requiring actual restraint of the person of the defendant under authority of a warrant or otherwise, or his voluntary submission to custody. The textual definitions a little more broadly require the arrests to be based on some "criminal charge" or "alleged or supposed crime." 5 C. J., p. 385, sec. 1; 6 C. J. S., p. 570, sec. 1; 4 Am. Jur., p. 7, sec. 4. The Restatement of the Law of Torts, sec. 112, defines an arrest thus: "An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law." And comment C therein says "An arrest is usually made for the purpose of bringing an actual or supposed criminal into court for the purpose of investigation or trial." See also Conoly v. Imperial Tobacco Co., 63 Ga. App. 880, 885, 12 S. E. (2d) 398, 403(4) and Peloquin v. Hibner, 231 Wis. 77, 84(2), 285 N. W. 380, 384. Both were damage suits for illegal arrest. But to the contrary see: U. S. v. Di Re, 92 L. Ed. 218; Johnson v. U. S., 92 L. Ed. 323.

It will be seen there is some authority for the view that an arrest may be made for the investigation of a supposed criminal. But while appellant has raised an interesting question we think it unnecessary to decide whether such an arrest would support [208] a search of his person, and must overrule the assignment. For in this case he made no objection whatever to the testimony of the arresting officers about the search until they had been put on the stand and

[2]5 C. J., p. 434, sec. 74; 6 C. J., p. 620, sec. 18; 4 Am. Jur., p. 47, sec. 68; State v. Owens, 302 Mo. 348, 356, 259 S. W. 100, 101(I), 32 A. L. R. 383; State v. Raines, 339 Mo. 884, 890(4), 98 S. W. 580, 584(6).

[3]State v. Raines, 339 Mo 884, 889(2), 98 S. W. (2d) 580, 583(3); 5 C. J., p. 399, sec. 30; 6 C. J. S., p. 587-601, sec. 6; 4 Am. Jur., p. 18, sec. 25.

had reached that point in their testimony. And it is well settled that the evidence obtained by the search will not be excluded, if it is relevant and competent, unless the defendant has previously made a motion to suppress it, (or possibly unless he had no reason to anticipate the evidence would be introduced, and was surprised. Annotations: 88 A. L. R. 348, 359; 134 A. L. R. 823, 826; 150 A. L. R. 566, 573. State v. Owens, supra, 302 Mo. l. c. 359(5), 259 S. W. l. c. 102(4), 32 A. L. R. 383; State v. King, 331 Mo. 268, 274(3), 53 S. W. (2d) 252, 255(2); State v. Tull, 333 Mo. 152, 166(6), 62 S. W. (2d) 389, 392(8).

■ Appellant further contends the trial court erred in refusing to sustain his motion to dismiss at the close of the State's case in chief, for the reason that there was a fatal variance between the proof offered by the State and the charge made in the information as to the value and ownership of the rings; and also because the evidence showed the rings, if stolen at all, were stolen from a building or dwelling house, and not from the person.

Further evidence must be stated in connection with this assignment. The prosecuting witness testified that on the day of the alleged larceny he had left the two rings in his coat at his cleaning plant and gone out. When he returned about 1½ hours later they were gone. He said he had given the ring with the diamond set to his wife as an engagement ring the month before, prior to their marriage. The gold band ring was a wedding ring, which he gave her when they were married. Thereafter they had some domestic trouble, and on the morning of the larceny he got the rings back from her. They were in a dresser drawer. He was asked if the rings didn't really belong to his wife and he denied it, and testified categorically that his wife "took and gave (him) back these rings"—this after being reminded he was testifying under oath.

We think this was enough to make a case for the jury on his ownership of the rings. If the rings actually belonged to both husband and wife it was still sufficient to plead ownership in him. Sec. 3943; State v. Nicoletti, 344 Mo. 86, 92(2), 125 S. W. (2d) 33, 36(3). As to their value, a jeweler who qualified as an expert without objection, said the diamond set ring was worth approximately $250 and the other one $7.50 to $10.00, as stated earlier in this opinion. This testimony alone was sufficient to make a case on value. Even though the rings were worth less than the value laid in the information ($375.00) the proof was sufficient since it showed they were worth more than $30.00, State v. Nicoletti, supra. On appellant's point that the evidence showed the rings were stolen from a "building or dwelling house," if stolen at all, of course the evidence does show the rings were stolen in a *building* (the cleaning plant building); but it does not even purport to show they were stolen in a "dwelling", unless appellant means to say the prosecuting witness stole them from his

wife in *their* dwelling. But the witness' testimony was entirely to the contrary.

Neither was it necessary for the State to prove the rings were stolen from the *person* of the owner. Sec. 4456, on which the information is based, does not require it any more than it requires that a "horse, mare" etc. be stolen from the *person!* Sec. 4459 does make the maximum punishment for stealing from the person seven years imprisonment in the penitentiary, whereas, under Sec. 4457(3) it is only five years for the ordinary stealing of personal property of the kind here involved. But that does not make the crime denounced by Sec. 4456 any the less grand larceny.

The fact that appellant, on a search of his person, was found to be in exclusive possession of the rings a few hours after they were missing, and his unconvincing and conflicting explanations of how they came to be in his sock, were enough to take the case to the jury on the issue of larceny by him. State v. Tomlinson, 352 Mo. 391, 395(1, 2), 177 S. W. (2d) 493, 494(1, 2); State v. Denison, 352 Mo. 572, 577(2), 178 S. W. (2d) 449, 452(3).

Another assignment in appellant's brief asserts the State's main instruction No. 1 [209] misdirected the jury in material matters. But he omits it from his Points and his Argument, and we see nothing wrong with it. The assignment is overruled.

Still another assignment is that the trial court erred in failing to instruct the jury on circumstantial evidence, as a part of the law of the case under Sec. 4070(4) since there was no direct evidence of the larceny. No such instruction was requested and it was not one which the statute requires the trial court to give in the absence of a request. State v. Mansker, 339 Mo. 913, 922(4), 98 S. W. (2d) 666, 672 (4, 5).

Appellant makes no assignments on the record proper, except as to the information, and we have already ruled on those contentions. However we find no other error therein. Since no error appears on the whole record, the judgment is affirmed. All concur.